UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


ROSEFERIN INVESTMENTS, LLC AND )
DEBRA ROSE,                    )
                              )
      Plaintiffs,            )
                              )
      v.                     )     CASE NO:  1:19-cv-02581-JRS-TAB
CLAYTON MORRIS,                )
MORRIS INVEST,                 )
LLC, NICOLE MECKLEY, LINZI DEL )
CONTE,                         )     **JURY DEMAND REQUESTED**
OCEANPOINTE INVESTMENTS        )
LIMITED, OCEANPOINT INVESTMENTS)
LLC, OCEANPOINTE INVESTMENTS aka )
OCEANPOINTE                    )
INVESTMENTS LTD aka OCEANPOINT )
INVESTMENTS LIMITED aka        )
OCEANPOINT HOLDINGS,           )
LLC, OCEANPOINTE PROPERTY      )
MANAGEMENT, LLC A/K/A          )
OCEANPOINT PROPERTY            )
MANAGEMENT, LLC, OCEAN POINT   )
PROPERTY MANAGEMENT, LLC AND   )
OCEAN POINTE PROPERTY          )
MANAGEMENT, LLC, OCEANPOINT    )
PROPERTIES LLC, A/K/A          )
OCEANPOINTE PROPERTIES LLC,    )
OCEAN POINT PROPERTIES LLC AND )
OCEAN POINTE PROPERTIES LLC,   )
OCEANPOINT HOLDINGS, LLC, A/K/A )
OCEANPOINTE HOLDINGS LLC,      )
OCEAN POINT HOLDINGS, LLC AND  )
OCEAN POINTE HOLDINGS, LLC, BERT)
WHALEN, NATALIE BASTIN, INDY JAX )
WEALTH HOLDINGS LLC, INDY      )
JAX PROPERTIES LLC,            )
                              )
      Defendants.            )

## SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiffs, Roseferin Investments, LLC ("Roseferin") and Debra Rose ("Rose" and collectively "Plaintiffs"), by counsel, for their Second Amended Complaint against Defendants, allege and state as follows:

## JURISDICTION, VENUE AND PARTIES

1.     This Court has original jurisdiction over this action under 28 U.S.C. 1332, which confers jurisdiction on the Court when the matter in controversy is over $75,000.00, and the parties are citizens of different states.

2.     The amount in controversy, exclusive of interests and costs, in this case is over $75,000.00.

3.     Plaintiff Roseferin Investments, LLC is a domestic limited liability company in the State of Indiana with its principal office located at 11715 Fox Road, Suite 400-107, Indianapolis, Indiana 46236.

4.     Plaintiff is a single member Limited Liability Company registered to do business in the state of Indiana.  However, the citizenship of an LLC, an unincorporated "artificial entity," is determined by the citizenship of its members.  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990).

5.     The sole member of Roseferin Investments, LLC is Debra Rose.  Debra Rose is a citizen of the state of California.

6.     Plaintiff Debra Rose is a citizen of the state of California.

7.     Defendant Clayton Morris ("Clayton Morris") is a citizen of the state of New Jersey.

8.     Defendant Morris Invest ("Morris Invest") is a limited liability company conducting and transacting in Marion County, Indiana with its principal office located at 100 Charles Ewing Boulevard, Suite 160, Ewing, NJ 08628.

2

9.     Defendant Nicole Meckley ("Meckley") is a citizen of the State of New Jersey, and the Operators Manager, authorized agent, owner/operator of Morris Invest.

10.     Defendant Linzi Del Conte ("Del Conte") is a citizen of the State of New Jersey and an authorized agent of Morris Invest, LLC.

11.     Defendant Oceanpointe Investments Limited (collectively referred to as "Oceanpointe") is a limited liability company conducting and transacting in Marion County with its principal office located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.

12.     Defendant Oceanpoint Investments LLC (collectively referred to as "Oceanpointe") is a limited liability company conducting and transacting in Marion County with its principal office located at 12634 Shorevista Drive, Indianapolis, IN 46236.

13.     Defendant Oceanpointe Investments a/k/a Oceanpointe Investments LTD a/k/a Oceanpointe Investments Limited a/k/a Oceanpoint Holdings, LLC (collectively referred to as "Oceanpointe") is a limited liability company conducting and transacting business in Marion County, Indiana with its principal office located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.

14.     Defendant Oceanpointe Property Management, LLC, a/k/a Oceanpoint Property Management, LLC, Ocean Point Property Management, LLC and Ocean Pointe Property Management, LLC (collectively referred to as "Oceanpointe"), is a limited liability company conducting and transacting in Marion County with its principal office located at 5868 E. 71st Street, Suite E340, Indianapolis, IN 46220 and/or at 1775 N. Sherman Drive, Suite A, Indianapolis, IN 46220 and/or at 117815 Fox Road, Suite 400-107, Indianapolis, IN 46236.

15.     Defendant Oceanpoint Properties LLC, a/k/a Oceanpointe Properties LLC, Ocean Point Properties LLC and Ocean Pointe Properties LLC (collectively referred to as "Oceanpointe")

3

is a limited liability company conducting and transacting in Marion County with its principal office located at 1775 N. Sherman Drive, Suite A, Indianapolis, IN 46220 and/or located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.

16.     Defendant Oceanpoint Holdings, LLC, a/k/a Oceanpointe Holdings, LLC, Ocean Point Holdings, LLC and Ocean Pointe Holdings, LLC (collectively referred to as "Oceanpointe"), is a limited liability company conducting and transacting in Marion County with its principal office located at 8604 Allisonville Road, Suite 256, Indianapolis, IN 46250 and/or located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.  Hereinafter all Oceanpoint and Indy Jax entities referenced in paragraphs 11-16 are collectively referred to as "Oceanpointe."

17.     Defendant Indy Jax Wealth Holdings LLC is a limited liability company conducting and transacting in Marion County with its principal office located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.

18.     Defendant Indy Jax Properties LLC is a limited liability company conducting and transacting in Marion County with its principal office located at 11715 Fox Road, Suite 400-107, Indianapolis, IN 46236.  Hereinafter all Oceanpoint and Indy Jax entities referenced in paragraphs 12-19 are collectively referred to as Oceanpoint.

19.     Defendant Bert Whalen ("Whalen") is a citizen of the State of Indiana and an authorized agent of Oceanpointe.

20.     Defendant Natalie Bastin ("Bastin") is a citizen of the State of Indiana and an authorized agent of Oceanpointe.

21.     Plaintiffs' citizenship in the state of California is diverse from the citizenship of all named Defendants.

22.     Venue is proper within the Southern District of Indiana under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claim occurred in the district.  The real property at issue is likewise located in this district.

## FACTS

**The Investment Business**

1.     Morris Invest is an investment company that offers turn-key real estate investments claiming on its website that Morris Invest finds, fixes, fills and manages great properties while the investor sees amazing returns on their investment.

2.     Morris Invest claims on its website that it has counseled hundreds of investors and these investors earn thousands of dollars in passive income each month.

3.     Clayton Morris, in a verified pleading filed in *Clayton Morris v. James Wise and The Holton-Wise Property Group, LLC,* under Case No. 1:19-cv-02467-DCN, refers to Morris Invest as his "Investing Business":

## FACTS

## Clayton Morris's Investing Business

4.     The services offered by Clayton Morris's investment business, Morris Invest, include investment advice, identification of investments for purchase and management of those investments for a fee.

5.     Clayton Morris promoted the Morris Invest real estate investment program through various marketing outlets and materials, including, but not limited to his websites, podcasts, and YouTube videos.     See     www.claytonmorris.com,     www.morrisinvest.com, www.claytonmorris.com/podcast,

https://www.youtube.com/channel/UCoJhK5kMc4LjBKdiYrDtz1A/ (last accessed August 27, 2020).

6.     Morris Invest's marketing materials claim that investors who invest in the program can realize a return on their investment through passive rental income in order to achieve financial freedom.

7.     Morris Invest circulated additional marketing material promoting podcasts that read, among other things: "Investing in Real Estate has a laser focus on buy and hold rental properties in order to create passive income.  Clayton shares tried and true methods for acquiring rental real estate, building net worth, and accelerating your financial freedom."

8.     Morris Invest regularly encouraged investors to visit their website and the website of Clayton.  It was on this website that Plaintiffs were encouraged to purchase and read Clayton Morris's book outlining a path to financial freedom.  Plaintiffs purchase this book and the claim made therein was part of the reason Plaintiffs ultimately decided to invest in Morris Invest's investment program.

9.     The investment program offered by Morris Invest is described as a simple three stage real estate investment plan.  First, once a potential investor is lured in by Morris Invest's marketing efforts, a call is scheduled with the investor and the Morris Invest Team to discuss the investor's investment and financial goals.  Second, the Morris Invest Team provides potential investments the investor selects from based on the Morris Invest Team's advice as to what investments would best suit the investor's investment and financial goals.  Third, the Morris Invest's "expert" Team takes care of the rest from construction or rehabilitation of the properties, securing tenants, managing the property, collecting rents and paying the investor on a monthly basis.

10.     In this case, Plaintiffs were lured in by Morris Invest's marketing efforts and booked a telephone call with Morris Invest's Portfolio Manager, James Federico in November of 2017.

**The Morris Invest Team**

11.     Morris Invest portrayed to investors that its investment team would handle everything in the investment process for the investor.  During numerous emails and telephone calls, from late November of 2017 through January of 2018, with Clayton Morris, James Federico, Linzi Del Conte, and Nicole Meckley all stated to Plaintiffs that the benefit of investing with Morris Invest is that Plaintiffs did not have to do anything.  The Morris Invest Team represented to Plaintiffs that they were in Indianapolis, "on the ground" making sure things got done right.

12.     Morris Invest's Team was comprised of an Operations Team, Property Management Team, Acquisitions Team and Violations Team.

13.     The primary members of the Morris Invest Team lined up to handle Plaintiffs' investments in this case were Linzi Del Conte, the Transactions Coordinator, Nicole Meckley, the Operations Manager, James Federico, Portfolio Manager, Erika Thomas, Office Assistant and Natalie Bastin.

14.     On December 5, 2017, Plaintiffs were informed that the Morris Invest Team would be sending them a welcome packet via email to get rolling with property management agreements and ACH deposits for rent roll as well as instructing that if and when they received a violation letter form Marion County they were to forward the letter by email to the Violations Team, all part of the Morris Investment Team involving Oceanpointe personnel too.

15.     On December 5, 2017, Linzi Del Conte emailed Plaintiffs letting them know that she and Nicole Meckley would be the ones on the Morris Invest Team to work with on everything in this turn-key investment program.

16.     On December 5, 2017, Nicole Meckley indicated to Plaintiffs that the Morris Invest Team was looking "forward to helping you create long term legacy wealth!"

17.     In the sales and onboarding phase of the investment process, the Morris Invest Team never mentioned that Oceanpointe personnel were not part of the Morris Invest Team or were working for separate or distinct entities.  To the contrary, the Morris Invest Team represented to the Plaintiffs that they were all working together on the same Team and that Morris Invest was one and the same as Oceanpointe for purposes of investment process.

18.     The Morris Invest Team members communicated with Plaintiffs primarily via email.  The disclaimer at the end of the Team members' emails indicated the "official business" being conducted by Defendants was that of Morris Invest and Oceanpointe:

**This message and its attachments may contain legally privileged or confidential information. It is intended solely for the named addressee. If you are not the addressee indicated in this message (or responsible for delivery of the message to the addressee), you may not copy or deliver this message or its attachments to anyone. Rather, you should permanently delete this message and its attachments and kindly notify the sender by reply e-mail. Any content of this message and its attachments that does not relate to the official business of Morris Invest and Oceanpoint Investments LLC must not be taken to have been sent or endorsed by them. No representation is made that this email or its attachments are without defect.**

## Plaintiffs Invest In The Program

19.     On or about November of 2017, Plaintiffs shared with the Morris Invest Team that her investment goals were to buy a property with the funds from her 401k.  Plaintiffs conveyed that she was looking for monthly income to supplement her retirement income and planned to accomplish that goal with the rental funds generated each month.  Plaintiff also shared that she intended to leave the property to her son after her passing as a gift of wealth to her posterity.

8

20.     On or about November of 2017 the Morris Invest Team (specifically James Federico), assured Plaintiffs that Plaintiffs' investment and financial goals were in line with what Morris Invest could accomplish and represented to Plaintiffs that Mr. Morris' clients were accomplishing the exact same goals right now.

21.     After discussing Plaintiffs' investment objectives, on or around the end of November 2017,  Mr. Morris and James Federico advised their clients, via telephone conference that in order to meet Plaintiffs' financial goals, they recommended Plaintiffs invest in a new construction property and advised Plaintiffs to take money from their retirement account to invest in this program.

22.     To entice Plaintiffs to invest, Morris Invest staff represented to Plaintiffs that purchasing a property was on a  "first come, first serve" basis in order to create a sense of urgency to invest in the program and if Plaintiffs didn't act quickly, the opportunity would be lost.

23.     Plaintiffs were directed to Clayton Morris's website, along with numerous communications via telephone in the Fall, 2017 with Linzi Del Conte, James Federico, Nicole Meckley, and Ericka Thomas  all of which represented to Plaintiffs that Morris Invest's investment program was truly a turn-key investment and that he and the Morris Invest Team had done all of the hard work and Plaintiffs need not do anything.

24.     On or about December 5, 2017, Linzi Del Conte emailed Plaintiffs stating, "Nicole our Operations Manager and myself will be taking you through the rest of the closing process.  We will connect you to our title team and will help you connect with our insurance team as well!"

25.     On or about December 15, 2017, Ericka Thomas emailed Plaintiffs stating, "We are here to help and make this process as hands off and easy for you as possible."

26.     Plaintiffs regularly received emails from Morris Invest recommending Plaintiffs watch promotional and educational videos.  These videos walked Plaintiffs through the investment process and touted the possible easy returns on the 'turn-key' investment.

**The Morris Invest Team Takes Plaintiffs Through The Investment Process**

27.     On or about December 5, 2017 Linzi Del Conte sent Plaintiffs the purchase agreement for the new construction on 3037 Station Street, Indianapolis, Indiana 46218 Property. *See* **Exhibit "A."**

28.     Mr. Morris signed the purchase agreement for the property located at 3037 Station that the Morris Invest Team advised Plaintiffs to purchase.

29.     As part of the process, Morris Invest provided its investors with a "Step by Step Guide to Purchasing Your Rental Property with Morris Invest in Indiana" that described the program within two pages.

30.     This guide was emailed to Plaintiffs by Linzi Del Conte of Morris Invest, which outlined every step from being matched with a property, signing a purchase agreement, working with Morris Invest's teammate at the title company to close on the property, working with Morris Invest's teammate to insure the property, guiding them through setting up a LLC and instructing Plaintiffs to "put down our property manager's name as the 'registered agent.'  Here's her info: Natalie Bastin."  Ms. Bastin's email address reflected an Oceanpointe address, but at all times it was represented to Plaintiffs as being on the Morris Invest Team providing turn-key investment services.

31.     On December 5, 2017, Nicole Meckley emailed Plaintiffs stating Morris Invest recommended they provide the Property Manager's Address as their tax mailing address so that if the county should send out a notice (i.e., lawn violation), it would be sent directly to the Team and

10

they "get on it right away to avoid any fines."  "If they were to send it to you and then you have to notify them, it may be too late and fines will be incurred.  Best to keep everything local.  Here is the address:  11715 Fox Road, Set. 400-107, Indianapolis, IN 46236.  The email address that will be used is: info@morrisinvest.com.  This is used simply to avoid multiple third party spam from filling up your personal email inbox."

32.     Morris Invest made it clear to Plaintiffs that Morris Invest did not want them communicating with anyone in the process outside of the Morris Invest Team and in particular the Operations Manager and Transaction Coordinator.  If Plaintiffs wanted to talk with the title company, they were directed to the Morris Invest Team.  If the Plaintiffs wanted to talk with the builder, they were directed to the Morris Invest Team.

33.     The Morris Invest Team intentionally and deliberately created a divide between the Plaintiffs and anyone outside of the Team.  The Morris Invest Team explained this was necessary in order to create a turn-key process for the benefit of the investor, but the isolation of contact and deprivation of information was really in place so that the Morris Invest Team could conceal from Plaintiffs that the investment sold to them was not as it was represented to them and the services that they promised to deliver in exchange for the investment were not being delivered as promised.

34.     On December 13, 2017, Plaintiffs paid into the investment program and closed on their investment property with cash withdrawn from Plaintiff's retirement funds.

35.     The Indiana Sales Disclosure Form states that the Seller of the property was Oceanpointe Investments.  Plaintiffs were under the impression as formed by Morris Invest's communications that Morris Invest and Oceanpointe were companies owned and operated by Clayton Morris.  So, even though Oceanpointe is designated as the seller on the closing paperwork

for the property, there would be no reason for Plaintiffs to think that they were not dealing with the Morris Invest Team exclusively as they had been told and instructed to do.

36.     At no time did the Morris Invest Team reveal to Plaintiffs that Plaintiffs were purchasing from any entity that was not a Morris Invest entity.  Instead, at every step of the process, Plaintiffs were led to believe Plaintiffs were dealing directly and exclusively with Morris Invest and the Morris Invest Team members.

37.     Although the Morris Defendants now claim that they had no involvement with Oceanpointe and the other entities listed above, that's not what they told other investors, including Plaintiffs, throughout the entire process:

On Thursday, June 29, 2017, 4:25 AM, Clayton Morris <clayton@morrisinvest.com> wrote:

Yes sir we have many LLC's that we use to hold our acquisitions before rehab. And that is just one of them we own.

From: ███████████████
Date: June 28, 2017 at 7:31:05 PM
To: Clayton Morris <clayton@morrisinvest.com>
Subject:  Re: Earlier bird

Just wondering, are you the owner of Oceanpoint holdings as well or is that a separate company that you just work with to manage the properties that you sell to investors like me?

**The Construction Timeline**

38.     After not hearing anything from the Morris Invest Team for months, Plaintiffs began to inquire in March of 2018 as to the construction timeline.

39.     Considering that Plaintiffs were investing a large portion of retirement funds in the Morris Invest program, Plaintiffs wanted assurances that construction was proceeding.

40.     On March 20, 2018 in an email from Linzi Del Conte, Plaintiffs were informed that "I have just been updated by my builder that your permits have been approved and your property

has broken ground!  Your property is currently in the excavation phase……..I will be able to send you updates at your project starts to move!"  This statement was not true at the time that it was made.

41.     In May, 2018, Clayton Morris by telephone communicated with Plaintiffs relating what he called good news that construction was finally moving forward because a funding problem had been corrected.  This statement was not true when it was made.  Construction was not moving forward on Plaintiffs' investment property.

42.     During this same call in which Clayton Morris misrepresented that construction was moving forward on Plaintiffs' Indiana property, he sold Plaintiffs another investment property in Ohio for an additional $38,000.  Had Plaintiffs known that Clayton was concealing the problems with the investment in Indiana, Plaintiffs would not have purchase an additional property in Ohio.

43.     In May, 2018, James Federico communicated with Plaintiffs and for the first time informed Plaintiffs that there may be a problem with the investment in Indiana.  James indicated that Morris Invest did not know if Plaintiffs investment was affected or not, but this was not true.  The Morris Invest Team had known for months that the money invested by Plaintiffs was not used being used for construction as was presented to Plaintiffs.

44.     Also for the first time in May, 2018 James Federico informed Plaintiffs that they needed to communicate with people outside of the Morris Invest Team regarding Plaintiffs' investment.  Federico told Plaintiffs that the "next step is to get the property assessed.  You can reach out to Charlie the builder at charlie@wairegroup.com.  Oceanpointe was the company that received all funds for properties that were sold by them or Indy Jax as soon on closing docs."

45.     This revelation was contrary to the numerous communications from the Morris Invest Team since Fall, 2017 that Plaintiffs were investing with Morris Invest and that the

investment program was turn-key such that Plaintiffs were to rely on Morris Invest for everything. The Morris Invest Team represented that personnel from Oceanpointe were part of the Morris Invest Team and that Morris Invest and Oceanpointe were one and the same. On numerous occasions, the Morris Invest Team prevented or discouraged Plaintiffs' communication with anyone not on the Morris Invest Team about any part of the investment process, including the builder, whom Plaintiffs sought to communicate with directly.

46.     The Morris Invest Team's failure to timely reveal that Plaintiffs would be dealing directly with or buying from Oceanpointe, which Morris Invest now claimed was not owned by or affiliated with Morris Invest, deprived Plaintiffs any opportunity to research Oceanpointe or its principal Bert Whalen.

47.     Had Plaintiffs known that they were investing with someone other than Morris Invest, namely Bert Whalen, Plaintiffs would have had the opportunity to research Whalen and discover his financial and criminal history. A simple internet search would have revealed that on December 18, 2017, an Order was issued by an Administrative Law Judge Panel finding that Mr. Whalen had six criminal convictions from July 17, 1998 through February 22, 2012. Mr. Whalen was found to have committed fraud when renewing his real estate license by not providing truthful responses disclosing these criminal convictions within his renewal application. Also, research would have revealed that Whalen had handled property management services for American Pension Services, Inc. ("APS") and was taking rent monies and depositing into a non-trust account and not remitting payments to APS. Whalen's real estate license was permanently revoked in Indiana. Research would have also revealed foreclosures, judgment liens and bankruptcy on Whalen's record. All of this information directly bears on his trustworthiness with respect to handling financial responsibility.

48.     The Morris Invest Team's concealment of this information contributed to the ultimate loss of Plaintiffs' investment.  Had Plaintiffs not been led to believe that they were dealing only with Morris Invest, but rather with Bert Whalen, Plaintiffs would not have invested their retirement savings in Morris Invest's investment program.

49.     Upon information and belief, Plaintiffs have come to learn that construction was not proceeding as reported because the builder was not given all of the money that Plaintiffs had invested to complete the work.   The money invested by Plaintiffs had been pooled with other investors' money and not earmarked for Plaintiffs' construction.  Plaintiffs' investment was not allocated as the Morris Invest Team had represented to Plaintiffs.

50.     The Morris Invest Team's systematic concealment of the failures to complete the investment services that were promised, including the construction services, contributed to the ultimate loss of Plaintiffs' investment because it deprived Plaintiffs the opportunity to investigate what was going on and mitigate damages that mounted over the course of the many months the properties sat vacant with no working being one and violations from the City being issued.

## COUNT I:  VIOLATION OF INDIANA UNIFORM SECURITIES ACT

51.     Plaintiffs incorporate by reference the foregoing paragraphs of this Second Amended Complaint, as if fully restated herein.

52.     Morris Invest, Clayton Morris and James Federico did offer or sell securities to Plaintiffs in the form of investment real estate with a promise of a return on funds used to purchase the real estate, without registering said securities under the Indiana Uniform Securities Act (the "Act").  Said securities were neither exempt from registration under the Act, nor were said securities federally covered securities as defined in the Act.

53.     Morris Invest, Clayton Morris and James Federico knowingly acted and transacted business as investment advisers, investment adviser representatives and/or agents as those terms are defined under the Act, in their offer and sale of the real estate investment and received compensation without being registered with the Indiana Securities Division, as required by law, and without being exempt from registration under the Act.

WHEREFORE, Plaintiffs, Roseferin Investment, LLC and Debra Rose, by counsel, request judgment in their favor, in an amount necessary to compensate Plaintiffs for all actual and other damages, to be determined at trial, together with attorney's fees, costs and for all other relief just and proper in the premises.

## COUNT II:  ALTERNATIVE CLAIMS FOR DECEPTIVE ACTS INVOLVED IN THE PROMOTION AND SALE OF INVESTMENT TO PLAINTIFFS

54.     Plaintiffs incorporate by reference the foregoing paragraphs of this Second Amended Complaint, as if fully restated herein.

55.     Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiffs plead claims in the alternative resulting from the deceptive acts of Morris Invest, Clayton Morris, and James Federico in the promotion and sale of the investment to Plaintiffs pursuant to the Indiana Uniform Securities Act, Indiana Code § 35-43-5-3 (Deception),1 and a theory of fraud in the inducement.

---

[1] Based upon an unknown number of complaints from other investors, the Indiana Attorney General filed a Complaint based on the same operative facts as alleged in this case.  *See State of Indiana v. Oceanpointe Investments LLC, Oceanpointe Investments Limited, JP Anderson Realty Group d/b/a Oceanpoint Property Management, Indy Jax Properties, LLC, Indy Jax Wealth Holdings, LLC, Morris Invest, LLC, Blue Sky Property Management, LLC, Clayton Morris, Natalie Bastin and Bert Whalen,* Cause No. 49D06-2005-PL-015069.  The State alleges claims for violations of the Indiana Deceptive Consumer Sales Act.  As there is some question as to whether Plaintiffs are consumers as defined by that statute, Plaintiffs are reluctant to plead similar claims even though the operative facts are nearly identical in both actions.  Even if Plaintiffs are not consumers, the sales practices used by Defendants were nevertheless deceptive as pled herein.

56.     In the sales process, Morris Invest, Clayton Morris and James Federico misrepresented to Plaintiffs that hundreds of clients of Morris Invest earned thousands of dollars in passive income each month as a means of enticing Plaintiffs to invest with them.   These representations were not true at the time they were made.

57.     To entice Plaintiffs to invest, Clayton Morris represented to Plaintiffs that renters were lined up ready to rent Plaintiffs' properties, but that was not true.

58.     To entice Plaintiffs to invest in the Ohio investment, Clayton Morris represented that there were no problems with the Indiana investment, but that was not true.

59.     Had Plaintiffs known that the representations these Defendants made to entice them to invest, were not true at the time that they were made, Plaintiffs would not have invested with Morris Invest.

60.     Plaintiffs were led to believe they were investing in a turn-key program where profits would be generated solely by the efforts of these Defendants.

61.     These Defendants persuaded Plaintiffs to purchase properties that they advised were matched to Plaintiffs' financial goals to achieve the profits that Defendants set out for Plaintiffs.   These properties were vacant lots sold for amounts far mor than they were worth because these Defendants convinced Plaintiffs that they were buying not just property, but a turn-key investment system.   However, the system that they were selling was not tried and true or proven as these Defendants represented.

62.     Morris Invest, Clayton Morris and James Federico led Plaintiffs to believe that Plaintiffs were dealing directly and exclusively with Morris Invest and the Morris Invest Team members.

63.     In the investment process, representations were made that Oceanpointe was one of Morris Invest's affiliated companies and part of the Morris Invest Team.

64.     Prior to Plaintiffs paying their money into the program, these Defendants made it clear to Plaintiffs that they were not to be communicating with anyone about the investment process outside of the Morris Invest Team.  This prevented Plaintiffs from learning Defendants' affiliation with Oceanpointe and Bert Whalen.  Had Plaintiffs known that Whalen or his affiliates were involved in the investment process, they would not have invested their retirement savings given Whalen's long history of committing financial crimes against others.

65.     The Defendants concealed that Plaintiffs were purchasing properties from Oceanpointe, a company that now they allege was not affiliated with Morris Invest despite prior assurances that they were one in the same.

66.     Based on representations made by and concealment of the truths known to these Defendants , Plaintiffs entered into an investment contract with  Morris Invest, Clayton Morris and James Federico enticed by the specific representations made that their investment relationship with these Defendants would include investment advice and counsel regarding how to accomplish Plaintiffs' financial goals, recommendations on suitable properties that would fit with Plaintiffs' financial objectives, construction and property management services,  manage tenants and provide rental income.

67.     Defendants did not deliver the investment that they represented to Plaintiffs.  With the requisite intent, Defendants misrepresented the identity of the persons and entities with whom Plaintiffs were investing, they misrepresented the results the claimed their other clients had achieved through communications with and advertisements given to Plaintiffs, which were false,

misleading and deceptive in that they did not reveal material facts to Plaintiffs with the intent to promote the sale of the investment.

68.     In reliance on Defendants' representations and without knowing of the truths Defendants actively concealed, Plaintiffs made their investment of with the reasonable expectation of realizing the profits from the services Defendants represented they were providing.

69.     These profits were to come from Defendants' efforts of building or rehabbing the properties, marketing to tenants, managing the properties and generating passive rental income as they described in their "turn-key" real estate investment program.

70.     Plaintiffs purchased more than a fee simple interest in the real estate that they bought. They also invested in Defendants' management services as well as advice.

71.     Plaintiffs did not reside in Indianapolis but rather far away and relied solely on Defendants' representations as to the real estate investment market in Indianapolis, the progress of completion on the properties as well as management services performed on the properties.

72.     Plaintiffs lacked the equipment and the experience to build or rehabilitate these properties as well as the ability to market and manage the properties in the Indianapolis area.

73.     Defendants knowingly or with reckless ignorance of their falsity, made material misrepresentations of past or existing facts, which representations were false and made with the intent to deceive Plaintiffs in efforts to sell their investment program.

74.     Plaintiffs rightfully relied Defendants' representations and have suffered loss due to Defendants' misrepresentations and concealment.

WHEREFORE, Plaintiffs, Roseferin Investment, LLC and Debra Rose, by counsel, request judgment in their favor, in an amount necessary to compensate Plaintiffs for all actual and other

damages, to be determined at trial, together with attorney's fees, costs and for all other relief just and proper in the premises.

### COUNT III:  ALTERNATIVE CLAIMS FOR FAILURE TO PROVIDE PROMISED SERVICES AND CONCEALMENT OF SUCH FAILURE

75.     Plaintiffs incorporate by reference the foregoing paragraphs of this Second Amended Complaint, as if fully restated herein.

76.     Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiffs plead claims in the alternative resulting from the failure to perform promised services and the concealment of such failure against Morris Invest, Clayton Morris, James Federico, Linze Del Conte, Nicole Meckley, Bert Whalen and Natalie Bastin pursuant to promissory estoppel, unjust enrichment and contract theories.

77.     Plaintiffs entered into agreements, both written and oral, with Defendants.

78.     Defendants breached these agreements.

79.     Defendants failed or refused to perform the turn-key investment services that they promised to perform as enticement for Plaintiffs investing with them.

80.     In repeated phone calls and email correspondence with Plaintiffs, Defendants misrepresented that services had been completed that were not completed.

81.     Defendants consistently represented that their failures would be remedied, all the while knowing that the services paid for by Plaintiffs were not being provided, nor were going to be provided.

82.     The affirmative acts of concealment by Defendants were calculated to mislead and hinder Plaintiffs from obtaining the truth despite their many inquiries.

83.     Defendants knowingly concealed their failures to provide these services through careful communications and false reassurances that tasks were progressing.

84.     Defendants affiliated with the Morris Invest Team knew or should have known that the truth was being concealed from Plaintiffs.

85.     Defendants have benefitted by Plaintiffs' investment by failing to perform as promised and as compensated.

86.      As a result of Plaintiffs' reliance upon said promises, Plaintiffs have incurred damages, including loss of Plaintiffs' investment, additional fines and losses to the property, as well deprivation of the opportunity to mitigate such damages caused by Defendants' active concealment.

87.     Injustice can be avoided only by enforcing Defendants' promises under the legal theories pled herein.

WHEREFORE, Plaintiffs Roseferin Investment, LLC and Debra Rose, by counsel, pray for judgment in their favor in an amount necessary to compensate Plaintiffs for all damages, to be determined at trial, together with attorney's fees, costs and for all other relief just and proper in the premises.

Respectfully submitted,

*/s/ Lisa M. Dillman*
Lisa M. Dillman, #18979-49
**APPLEGATE & DILLMAN**
**LITIGATION GROUP**
2344 S. Tibbs Ave.
Indianapolis, IN 46241
Office (317)492-9569
Facsimile (800)533-4592
lisa@applegate-dillman.com

Jynell D. Berkshire, #21999-49
**BERKSHIRE LAW, LLC**
1230 E. Vermont Street
Indianapolis, IN 46202
Office (317)434-3000
jynell@berkshirelawllc.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs, Roseferin Investments, LLC and Debra Rose demands a trial by jury on all

issues in the foregoing Second Amended Complaint so triable.

Respectfully submitted,

*/s/ Lisa M. Dillman*
Lisa M. Dillman, #18979-49
**APPLEGATE & DILLMAN
LITIGATION GROUP**
2344 S. Tibbs Ave.
Indianapolis, IN 46241
Office (317)492-9569
Facsimile (800)533-4592
lisa@applegate-dillman.com

Jynell D. Berkshire, #21999-49
**BERKSHIRE LAW, LLC**
1230 E. Vermont Street
Indianapolis, IN 46202
Office (317)434-3000
jynell@berkshirelawllc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

That undersigned certifies that on August 28, 2020, the foregoing has been filed with the Clerk of the Court by using the CM/ECF system.  Notice of this filing has been sent to the following counsel by operation of the Court's electronic filing system and by U.S. First Class Mail for those parties not registered.  Parties may access this filing through the Court's system.

| | |
|---|---|
| David Hensel<br>Molly Harkins<br>Amanda Mulroony<br>HOOVER HULL TURNER LLP<br>111 Monument Circle, Suite 4400<br>Indianapolis, IN 46204<br>dhensel@hooverhullturner.com<br>mharkins@hooverhullturner.com<br>amulroony@hooverhullturner.com | Oceanpointe Investments Limited<br>c/o Bert Whalen, Registered Agent<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 |
| Oceanpoint Investments LLC<br>c/o Bert Whalen, Registered Agent<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 | Oceanpointe Investments a/k/a Oceanpointe Investments LTD a/k/a Oceanpointe Investments Limited a/k/a Oceanpointe Holdings, LLC<br>c/o Bert Whalen, Registered Agent<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 |
| Oceanpointe Property Management, LLC a/k/a Oceanpoint Property Management, LLC, Ocean Point Property Management, LLC and Ocean Pointe Property Management, LLC<br>c/o Registered Agent<br><br>5868 E. 71st Street, Suite E340<br>Indianapolis, IN 46220<br><br>1775 N. Sherman Drive, Suite A<br>Indianapolis, IN 46220<br><br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 | Oceanpoint Properties LLC a/ka/ Oceanpointe Properties LLC, Ocean Point Properties LLC and Ocean Pointe Properties LLC<br>c/oRegistered Agent<br><br>1775 N. Sherman Drive, Suite A<br>Indianapolis, IN 46220<br><br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 |
| Oceanpoint Holdings, LLC a/k/a Oceanpointe Holdings, LLC, Ocean Point Holdings, LLC and Ocean Pointe Holdings, LLC<br>c/o  Registered Agent | Indy Jax Wealth Holdings LLC<br>c/o Chris Neuser, Registered Agent<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 |

| 8604 Allisonville Road, Suite 256<br>Indianapolis, IN 46250<br><br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 | |
| --- | --- |
| Indy Jax Properties LLC<br>c/o Chris Neuser, Registered Agent<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 | Bert Whalen<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 |
| Natalie Bastin<br>11715 Fox Road, Suite 400-107<br>Indianapolis, IN 46236 | |

*/s/ Lisa M. Dillman*
Lisa M. Dillman

**APPLEGATE & DILLMAN**
**LITIGATION GROUP**
2344 S. Tibbs Ave.
Indianapolis, IN 46241
Office (317)492-9569
Facsimile (800)533-4592
lisa@applegate-dillman.com

Jynell D. Berkshire
**BERKSHIRE LAW, LLC**
1230 E. Vermont Street
Indianapolis, IN 46202
Office (317)434-3000
jynell@berkshirelawllc.com