IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROSEFERIN INVESTMENTS, LLC AND DEBRA ROSE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:19-cv-02581-JRS-TAB ) |
| CLAYTON MORRIS, et al., | ) ) |
| Defendants. | ) ) |

## MORRIS DEFENDANTS' BRIEF IN SUPPORT OF
## THEIR MOTION TO STRIKE AND MOTION TO DISMISS

Defendants Clayton Morris, Morris Invest, LLC, Nicole Meckley, and Linzi Del Conte (the "Morris Defendants")[1], by counsel, and pursuant to Rules 12(f) and 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of the Court for the United States District Court for the Southern District of Indiana, respectfully move this Court to (i) strike Plaintiffs' newly added claims under the Indiana Uniform Securities Act ("IUSA") and their newly added claim for deception from the Second Amended Complaint ("Second Am. Compl."), or, in the alternative, dismiss these new claims pursuant to Rule 12(b)(6), and (ii) dismiss Plaintiffs' claims for fraud in the inducement, promissory estoppel, unjust enrichment, and breach of contract pursuant to Rule 12(b)(6).

The Morris Defendants seek to strike Plaintiffs' IUSA claims and claim for deception from the Second Amended Complaint because the Court's order on the Morris Defendants' motion to

---

[1] Plaintiffs purport to assert claims against James Federico. *See* Second Amended Complaint, Counts I-III. However, Mr. Federico is not named as a party to this action.

dismiss did not permit Plaintiffs to plead new causes of action; rather, Plaintiffs were permitted to file an amended complaint to correct the deficiencies identified in the Court's Order.

Additionally, the Morris Defendants seek dismissal of Plaintiffs' Second Amended Complaint for the following reasons:

- in Count I, Plaintiffs' IUSA claims fail because Plaintiffs did not purchase a security;

- in Count II, Plaintiffs fail to state claims for securities fraud and/or deception, deception, and fraud-in-the-inducement because: (i) without a security, there can be no securities fraud and/or deception, (ii) the claims are premised on non-actionable future conduct, and (iii) the alleged conduct and injury for deception and fraud in the inducement are not distinct from the alleged conduct and injury for the breach of contract; and

- in Count III:
  - Plaintiffs fail to state a claim for breach of contract because (i) Morris Invest, LLC, Nicole Meckley, and Linzi Del Conte are neither parties nor signatories to the purchase agreement, (ii) the purchase agreement does not contain any terms obligating the Morris Defendants to perform "turn-key investment services," and (iii) the purchase agreement contains an integration clause barring any prior and/or subsequent written and/or oral agreements;
  - Plaintiffs fail to state a claim for promissory estoppel because (i) contracts are alleged to exist that cover the express subject matter of the claim, (ii)

the claim is not properly pled in the alternative, and (iii) Plaintiffs have not alleged all of the essential elements of promissory estoppel; and

- o  Plaintiffs fail to state a claim for unjust enrichment because (i) contracts are alleged to exist that cover the express subject matter of the claim, and (ii) the claim is not properly plead in the alternative.

## I. FACTUAL BACKGROUND[2]

On December 13, 2017, Plaintiff Roseferin Investments LLC (through its sole member, Plaintiff Debra Rose) purchased a property located at 3037 Station Street, Indianapolis, IN (the "Property") from Oceanpointe Investments. *See* Second Am. Compl., ¶ 34 and Ex. A (closing documents for the Property).[3] While Clayton Morris's signature appears on the purchase agreement, neither he nor any of the other Morris Defendants owned or sold the Property to Plaintiffs or received funds from Plaintiffs for the Property. Second Am. Compl., Ex. A (purchase agreement and closing documents for the Property). Rather, Oceanpointe Investments owned and sold the Property to Plaintiffs and received funds from Plaintiffs for the Property at closing. *See e.g.,* Second Am. Compl., Ex. A (ALTA Settlement Statement). Now, years after purchasing the Property from Oceanpointe Investments, Plaintiffs allege that the failure to construct a new home on the Property and provide "turn-key investment services" (for which there are no contracts with the Morris Defendants nor were the Morris Defendants paid to perform such work and services) serves as the basis for claiming that the Morris Defendants breached contracts, engaged in

---

[2] The Morris Defendants dispute the allegations and characterizations in Plaintiffs' Second Amended Complaint and deny all liability. But, for purposes of this motion to dismiss only, they are taken as true.

[3] Plaintiffs reference a property they purchased in Ohio. *See e.g.*, Second Am. Compl., ¶ 42. However, that property is not at issue in this case. *See* Second Am. Comp., ¶ 22 ("The real property at issue is likewise located in" the Southern District of Indiana).

3

deceptive behavior, committed fraud in the inducement, made legally enforceable promises, have been unjustly enriched, and committed statutory violations. Second Am. Compl., Counts I-III.

Plaintiffs initially filed their original complaint on June 25, 2019. [Filing No. 1.] Plaintiffs brought claims for breach of contract, fraud, fraud in the inducement, promissory estoppel, unjust enrichment, and offense against property against various defendants, including Clayton Morris, Morris Invest, Nicole Meckley, and Linzi Del Conte. *Id*.

On August 2, 2019, the Court issued an Order directing Plaintiffs to file an amended complaint to correct jurisdictional insufficiencies. [Filing No. 9.] On August 22, 2019, Plaintiffs filed a motion for leave to file their first amended complaint, which was granted on August 30, 2019. [Filing Nos. 10-11.] Plaintiffs filed their amended complaint on September 6, 2019. [Filing No. 12.] Like Plaintiffs' original complaint, the amended complaint asserted claims for breach of contract, fraud, fraud in the inducement, promissory estoppel, unjust enrichment, and offense against property. The Morris Defendants filed a motion to dismiss, which the Court granted in part and denied in part. [Filing Nos. 29-30, 39.] Specifically, the Court dismissed Plaintiffs' breach-of-contract claim against Morris Invest, Nicole Meckley, and Linzi Del Conte. [Filing No. 39.] The Court also dismissed Plaintiffs' fraud, fraud-in-the-inducement, promissory-estoppel, unjust-enrichment, and offense against property claims against the Morris Defendants. *Id*. The Court allowed Plaintiffs twenty-one days to file an amended complaint to address the deficiencies identified in the Order. *Id*.

On August 28, 2020, Plaintiffs filed their Second Amended Complaint. [Filing No. 43]. But Plaintiffs' allegations in the Second Amended Complaint are just as deficient as the allegations

4

contained in the Amended Complaint.[4] Each of the claims in the Second Amended Complaint fails to state a claim upon which relief may be granted against the Morris Defendants. Plaintiffs have had multiple opportunities to plead sufficient allegations against the Morris Defendants; they have not done so, and they should not be given another chance. Rather, the Court should dismiss the entirety of the Second Amended Complaint against each of the Morris Defendants, with prejudice.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a "complaint must contain allegations that 'state a claim to relief that is plausible on its face.'" *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). Courts "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* at 616 (citing *Iqbal*, 129 S. Ct. at 1951). After "excising" legal conclusions and conclusory allegations, the court must determine "whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951).

To be plausible, the remaining factual allegations must "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations "giv[ing] rise to an 'obvious alternative explanation,'" *McCauley*, 671 F.3d at 616 (quoting *Iqbal*, 129 S. Ct. at 1951; *Twombly*, 550 U.S. at 567), "may 'stop[] short of the line between possibility and plausibility,'" *id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). A court necessarily

---

[4] As discussed in Part III(A), *infra*, the Morris Defendants are asking the Court to strike Plaintiffs' newly added claims under the IUSA, as well as their newly added deception claim. Alternatively, they are asking the Court to dismiss these claims pursuant to Rule 12(b)(6).

5

relies on "judicial experience and common sense" to determine plausibility in context. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). More complex cases require more detailed pleading. *Id.* at 616-17. The point of the notice requirement "is less to give the defendant enough information to begin to prepare a defense . . . than to allow the court to determine at the outset of the litigation, before costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not the case can be got rid of immediately without clogging the court's docket and imposing needless expense on the defendant." *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999).

### III. ARGUMENT

**A. The Court did not permit Plaintiffs to assert new causes of action in their Second Amended Complaint.**

In its Order on the Morris Defendants' Motion to Dismiss, the Court ordered the following: "Plaintiffs are allowed twenty-one days within which to file an amended complaint to address the deficiencies identified in this order, provided Plaintiffs can do so consistent with counsel's obligations under Fed. R. Civ. P. 11. Otherwise, these claims will be dismissed with prejudice." Filing No. 39, at 14.

Plaintiffs filed a Second Amended Complaint, wherein they attempt to correct the deficiencies the Court identified with respect to their breach-of-contract, promissory estoppel, unjust enrichment, and fraud-in-the inducement claims.[5] In addition to attempting to correct their pleading deficiencies with respect to those claims, Plaintiffs also have added new claims under the IUSA and a new claim for deception. But the Court's dismissal Order did not grant Plaintiffs leave

---

[5] Plaintiffs did not attempt to correct the deficiencies the Court identified with respect to their claims for fraud or Offense Against Properties. Those claims should be dismissed with prejudice pursuant to the Court's order. *See* Filing No. 39 (noting that Plaintiffs' claims would be dismissed with prejudice if they did not file an amended complaint to address the deficiencies identified in the Order).

to file new causes of action against the Morris Defendants. Nor have Plaintiffs requested leave to file these new causes of action. *See* Fed. R. Civ. P. 15(a)(2). Moreover, allowing Plaintiffs to amend their complaint to add these claims would unfairly allow Plaintiffs to bring new causes of action against the Morris Defendants with information that was readily available to Plaintiffs at the time they filed their original complaint and their amended complaint. Plaintiffs' claims under the IUSA and their deception claim should be stricken from the Second Amended Complaint pursuant to Rule 12(f). Alternatively, the Morris Defendants move to dismiss these newly added claims for the reasons discussed in Parts B and C, *infra*.

> **B.   Even if Plaintiffs were permitted to amend their Second Amended Complaint at this late date to assert claims under the IUSA, such claims nevertheless fail.**
>
> **1.   Plaintiffs did not purchase securities.**

Plaintiffs allege that Morris Invest and Clayton Morris "did offer or sell securities" to them "in the form of investment real estate with a promise of a return on funds used to purchase the real estate, without registering said securities under" the IUSA and that they "knowingly acted and transacted business as investment advisers, investment adviser representatives, and/or agents as those terms are defined under the Act, in their offer and sale of the real estate investment and received compensation without being registered with the Indiana Securities Division, as required by law, and without being exempt from registration under the Act." Second Am. Compl., ¶¶ 52-53. However, Plaintiffs' IUSA claims fail because Plaintiffs did not purchase a security; they merely purchased real property from Oceanpointe Investments.

The IUSA defines a "security" to "mean[] a note ... evidence of indebtedness ... [or an] investment contract[.]" *See* Ind. Code § 23-19-1-2(28) (alterations added). The IUSA "characterizes an 'investment contract' as 'an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the

investor[.]'" *Indiana ex rel. Naylor v. Indiana State Teachers Ass'n*, 950 F. Supp. 2d 993, 1002 (S.D. Ind. 2013); *see also* Ind. Code § 23-19-1-2(28)(D). "Indiana courts utilizing these statutory definitions have borrowed from federal jurisprudence[.]'"[6] *Indiana State Teachers Ass'n.*, 950 F. Supp. 2d, at 1002-03.

Plaintiffs' purchase of real estate did not constitute "notes," "evidence of indebtedness," or "investment contracts." Plaintiffs merely purchased real estate from Oceanpointe Investments. *See* Second Am. Compl., Ex. A (closing documents for the Property). The purchase agreement states that the agreement is for the sale of "[t]he property … together with any existing permanent improvements and fixtures attached . . . ." *See* Second Am. Compl., Ex. A (purchase agreement, ¶ 2). Plaintiffs paid Oceanpointe Investments for the Property in cash, and the purchase agreement states that the conveyance of the Property shall be by general warranty deed. *See* Second Am. Compl., Ex. A (purchase agreement, ¶¶ 5 and 22D, and closing documents indicating the absence of a loan or mortgage). Additionally, the purchase agreement is completely devoid of any reference to other "investors," or terms relating to the management skills of others or the derivation of profits from the efforts of others. Accordingly, neither the "common enterprise" nor "expectation of profits to be derived primarily from the efforts of a person other than the investor" prongs of the IUSA's test for an investment contract is satisfied.

Federal courts evaluating federal and state securities fraud claims have concluded that a purchase of fee simple real estate plus property-management services is not a "security."[7] In

---

[6] The federal definition of an investment contract is nearly identical to Indiana's definition. In *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), the Supreme Court set forth the test for whether a transaction qualifies as an investment contract for purposes of federal securities law. The elements of the *Howey* test are: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999).

[7] "[R]eliance on cases interpreting federal securities law may be helpful to interpret the [IUSA] where the language is similar." *Rector, Wardens, Vestrymen of Christ Church Cathedral of Indianapolis v. JPMorgan Chase & Co.*, No. 1:14-

*Tolentino v. Mossman*, for example, the plaintiffs purchased real properties for investment purposes and entered into related property management agreements. No. 6:08-cv-2027-EJM, 2009 WL 3431590, at *1 (N.D. Iowa Oct. 23, 2009). The plaintiffs later filed suit, alleging various violations of securities law. *Id*. at *1-2. The court granted the defendants' motion to dismiss, finding that there was no security in the form of an "investment contract" because "plaintiffs owned the properties in fee simple" and "were not obligated to place absolute reliance on others in connection with the management of the rental property." *Id*. at *4; *see also Alunni v. Dev. Res. Grp., LLC*, 445 F. App'x 288, 296, 298 (11th Cir. 2011) ("neither the 'common enterprise' nor 'expectation of profits solely from the efforts of others' prongs were satisfied," and thus the real estate contract did not constitute an investment contract). Here, as the sole owners of the real estate, Plaintiffs had the ability to fully control the real estate themselves; they were not obligated to place reliance on any other person or entity to manage their property. And the purchase agreement lacks any terms relating to the investment of money, the management skills of others, and the derivation of profits from the efforts of others. Thus, because the purchase agreement does not constitute a note, debt, or an investment contract, Plaintiffs did not purchase a security, and the IUSA does not apply to the transaction at issue.

### 2. The lack of a "security" defeats Plaintiffs' other IUSA claims.

Because Plaintiffs did not purchase a "security," their IUSA-based claims fail because:

- Without a "security," there can be no failure to register a "security." Second Am. Compl., ¶ 52; and

---

cv-01331-LJM-MJD, 2015 WL 2449556, at *8 (S.D. Ind. May 21, 2015) (citing *Lean v. Reed*, 876 N.E.2d 1104, 1108-09 (Ind. 2007)).

9

- Without a "security," Morris Invest and Clayton Morris cannot be investment advisers, investment adviser representatives, and/or agents, as those terms are defined under the IUSA. Second Am. Compl., ¶ 53.

C. **Plaintiffs have failed to sufficiently plead securities fraud and/or deception, deception[8], and fraud-in-the-inducement[9].**

1. **Without a security, there can be no securities fraud.**

As explained in Part B, *supra*, Plaintiffs did not purchase a security. Without a "security," there can be no securities fraud or deception. Thus, to the extent Plaintiffs assert a claim against Morris Invest and Clayton Morris for securities fraud and/or deception under the IUSA, such claim must be dismissed.

2. **Plaintiffs' allegations of misrepresentations relate to future conduct or opinion and fail as a matter of law.**

The nature of the alleged misrepresentations relates to non-actionable future conduct or opinion. Indiana does not allow fraud claims "based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992).

Plaintiffs allege that, based on Morris Invest's and Clayton Morris's alleged misrepresentations and concealments, they "entered into an investment contract with" Morris Invest and Clayton Morris "enticed by the specific representations made that their investment relationship with these Defendants *would* include investment advice and counsel regarding how to accomplish Plaintiffs' financial goals, recommendations on suitable properties that *would* fit with

---

[8] Deception requires that a person "knowingly or intentionally makes a false or misleading written statement with intent to obtain property[.]" Ind. Code § 35-43-5-3(a)(2). "[T]he elements of criminal deception under Indiana Code 35–43–5–3(a)(2) are the same as the elements of fraud[.]" *Valley Forge Renaissance, L.P. v. Greystone Servicing Corp. Inc.*, No. 1:09-cv-131-WTL-JMS, 2010 WL 76455, at *4 (S.D. Ind. Jan. 6, 2010).

[9] A claim for fraud in the inducement has the same elements of a fraud claim. *Massey v. Conseco Servs., LLC*, 879 N.E.2d 605, 611 (Ind. Ct. App. 2008), *aff'd on reh'g*, 886 N.E.2d 581 (Ind. Ct. App. 2008).

10

Plaintiffs' financial objectives, construction and property management services, manage tenants, and provide rental income." Second Am. Compl., ¶ 66 (emphasis added); *see also, e.g.*, ¶ 11 ("Morris Invest portrayed to investors that its investment team *would* handle everything in the investment process for the investor.") (emphasis added). Moreover, Plaintiffs' use of the word "turn-key" in the Second Amended Complaint focuses on future conduct – what Morris Invest and Clayton Morris *would* allegedly do for Plaintiffs. But what a person *would* or *should* have done is not properly within a fraud claim, nor is a statement of opinion or future value. *See, e.g.*, *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995) (holding that a person's representation that "he *would* submit the credit application for approval was one regarding future conduct and therefore not a representation of a past or existing fact") (emphasis added); *Schott v. Huntington Nat'l Bank*, 914 F. Supp. 2d 933, 942-43 (S.D. Ind. 2012) ("We also note that, to the extent such expressions can be deemed promises of what Defendant 'would' do or directives as to what Plaintiff 'should' do, they do not properly frame a fraud claim.").

Indiana simply does not allow fraud claims based on representations regarding future conduct, or on broken promises, unfulfilled predictions, valuation, opinion, or statements of existing intent which are not executed. *Sachs v. Blewett*, 185 N.E. 856, 858 (Ind. 1933) ("This court has repeatedly said that actionable fraud cannot be predicated upon a promise to do a thing in the future, although there may be no intention of fulfilling the promise."); *see also Wheatcraft v. Wheatcraft,* 825 N.E.2d 23, 30-31 (Ind. Ct. App. 2005) ("The general rule is that statements of value are regarded as mere expressions of opinion."); *Pugh's IGA, Inc. v. Super Food Services, Inc.*, 531 N.E.2d 1194, 1198 (Ind. Ct. App. 1988) ("Expressions of opinion are not actionable."). "[S]uch allegations paint a scenario of broken promises, which sound in contract, not fraud." *Ello v. Brinton*, No. 2:14-CV-299-TLS, 2015 WL 2340754, at *5 (N.D. Ind. May 13, 2015) (dismissing

fraud claims premised on false representations during lease negotiations of what defendants "would" do). Because Plaintiffs' deception and fraud-in-the-inducement claims are premised on future conduct or opinion, they should be dismissed for failure to state a claim upon which relief may be granted.

### 3. Plaintiffs' deception and fraud-in-the-inducement claims are neither distinct nor independent from their breach-of-contract claim.

Ultimately, Plaintiffs' deception and fraud-in-the-inducement claims are merely a repackaged version of their breach-of-contract claim. Plaintiffs are trying to recover damages for work or services that they allege were to be performed by Morris Invest and Clayton Morris pursuant to the parties' alleged agreements, which allegedly were not performed or completed. *Compare e.g.*, ¶¶ 68-70 to ¶¶ 79, 83-86. Indiana courts have stated that "a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004). Here, Plaintiffs have pleaded identical injuries stemming from the alleged deception and fraud in the inducement and the alleged breach of contract: damages for failure to complete construction and provide turn-key investment services. This bars the Plaintiffs' deception and fraud-in-the-inducement claims. *See Fritzinger v. Angie's List, Inc.*, No. 1:12-cv-01118, 2013 WL 772864, at *2-4 (S.D. Ind. Feb. 28, 2013) (dismissing the plaintiff's deception claim for failure to allege a separate and independent tort with a distinct injury); *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-cv-0020-TWP-DKL, 2012 WL 1712554, at *9 (fraud claim premised on the same core conduct and resulting in the same injury as a breach-of-contract claim is not plausible as a matter of law). Because Plaintiffs' deception and fraud-in-the-inducement claims are premised on the same conduct and allege the same injury as their breach-of-contract claim, Plaintiffs' claims must

be dismissed.

> **D. Plaintiffs fail to state a valid breach-of-contract claim against the Morris Defendants.**
>
>> **1. Morris Invest, Nicole Meckley, and Linzi Del Conte are neither parties nor signatories to the purchase agreement.**

It is axiomatic that a defendant to a breach-of-contract claim is necessarily a party to a contract. *Corry v. Jahn*, 972 N.E.2d 907, 913 (Ind. Ct. App. 2012) (noting that homeowners had no cause of action for breach of contract against a company with whom the homeowners had no contract); *Columbia Club, Inc. v. Am. Fletcher Realty Corp.*, 720 N.E.2d 411, 417 (Ind. Ct. App. 1999) ("A person typically cannot be held liable for breach of contract unless it is shown that he was a party to the contract."); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Northbound Grp. v. Norvax Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) ("[A] party to a contract [cannot] s*ue a non-party* for breach of the contract simply because the non-party has a close relationship with the other party to the contract who has breached.") (emphasis in original). Here, Morris Invest, Nicole Meckley, and Linzi Del Conte are neither parties nor signatories to the purchase agreement. *See* Second Am. Compl., Ex. A (purchase agreement). Therefore, as this Court noted in its Order on the Morris Defendants' motion to dismiss, Filing No. 39, any purported breach-of-contract claim against Morris Invest, Nicole Meckley, and Linzi Del Conte fails. The Court should dismiss the breach-of-contract claim against Morris Invest, Nicole Meckley, and Linzi Del Conte.

>> **2. The purchase agreement contradicts the alleged bases for Plaintiffs' breach-of-contract claim.**

The terms of the purchase agreement contradict Plaintiffs' allegations that the Morris Defendants were contractually obligated to perform "turn-key investment services" for Plaintiffs. Plaintiffs allege that they "entered into agreements, both written and oral, with" the Morris

Defendants, that the Morris Defendants "breached th[o]se agreements," and that the Morris Defendants "failed or refused to perform the turn-key investment services that they promised to perform[.]" Second Am. Compl., ¶¶ 77-79 (alterations added). But a simple review of the purchase agreement shows that there are no terms or obligations related to "turn-key investment services." While this Court is to accept well-pleaded allegations as true, that requirement no longer holds when an allegation is contradicted by an exhibit. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."). The purchase agreement does not contain any terms or obligations relating to "turn-key investment services." Thus, because the Morris Defendants were not contractually obligated to perform these "turn-key investment services," any breach-of-contract claim premised on such fails to state a claim upon which relief can be granted.

      **3.**      **The integration clause contained in the purchase agreement bars any alleged prior and/or subsequent written and/or oral agreements.**

To the extent Plaintiffs allege that they made other written and/or oral agreements with the Morris Defendants for "turn-key investment services," such allegations also fail. The purchase agreement contains an integration clause, which provides that the purchase agreement is the only contract dealing with the transaction and that the purchase agreement cannot be changed without the parties' written consent. Specifically, the purchase agreement provides that the purchase agreement "constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent." Second Am. Compl., Ex. A (purchase agreement, ¶ 22(I)). Accordingly, the integration clause bars any argument that, absent a writing, a separate agreement between these parties could be entered into at a different point in time related

to this transaction. Thus, regardless of when these alleged written and/or oral agreements arose, either before or after the purchase agreement was executed, no new terms could be added without a writing. *See* Filing No. 39, at 6 ("Plaintiffs have not alleged that the Purchase Agreement was changed by both parties' written consent, as required by the Purchase Agreement and the Indiana Statute of Frauds.").

E. **Plaintiffs fail to state a claim for promissory estoppel.**

1. **Contracts are alleged to exist that cover the express subject matter of the claim.**

The conduct at the heart of the promissory-estoppel claim is substantively the same as the conduct that forms the basis of Plaintiffs' breach-of-contract claim. *See* Second Am. Compl., ¶ 77 ("Plaintiffs entered into *agreements*" with the Morris Defendants), ¶ 78 ("Defendants breached these agreements"), and ¶ 79 ("Defendants failed or refused to perform the turn-key investment services that they promised to perform as enticement for Plaintiffs investing with them.") (emphasis added). Because Plaintiffs allege contracts cover this very conduct, they are barred from recovering for promissory estoppel. Indiana will permit promissory estoppel "only where no contract in fact exists." *CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1098 (N.D. Ind. 2011). This means that "if the promises … are founded on a valid written contract between the parties, then the promissory estoppel claim becomes unwarranted surplusage." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005); *see also Wabash Nat'l Corp. v. Fleet Equipment, LLC*, No. 4:11-cv-62, 2012 WL 13071524, at *11-12 (N.D. Ind. June 13, 2012) (dismissing a promissory-estoppel claim because a written contract covered the same subject matter). Because Plaintiffs allege written contracts cover the exact subject matter of their promissory estoppel claim, Plaintiffs are barred from recovery. This Court

should dismiss Plaintiffs' promissory estoppel claim for failure to state a claim upon which relief can be granted.

### 2. The promissory estoppel claim is not properly pled in the alternative.

While Plaintiffs claim in paragraph 76 that they are pleading "claims in the alternative," the allegations contained in Count III show otherwise. Plaintiffs pled their breach-of-contract claim and promissory estoppel claim in the same count. And, most importantly, they specifically allege the existence of contracts with the Morris Defendants. *See* Second Am. Compl., ¶ 77 ("Plaintiffs entered into *agreements*" with the Morris Defendants") (emphasis added). Simply put, Plaintiffs "did not attempt to plead in the alternative; they clearly pleaded in tandem." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). Absent proper alternative pleading, Plaintiffs' promissory estoppel claim cannot survive.

### 3. Plaintiffs have not alleged all of the essential elements of promissory estoppel.

To recover under a promissory estoppel theory in Indiana, a plaintiff must show: "(1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Turner v. Nationstar Mortg., LLC*, 45 N.E.3d 1257, 1265 (Ind. Ct. App. 2015). Plaintiffs have not alleged that the Morris Defendants made a promise to them with the expectation that they would rely thereon, nor have they alleged that the promise was of a definite and substantial nature. Because Plaintiffs have not alleged all of the essential elements of promissory estoppel, their promissory estoppel claim should be dismissed.

**F. Plaintiffs fail to state a claim for unjust enrichment.**

**1. The express terms of the alleged contract preclude recovery.**

Under Indiana law, "unjust enrichment is 'also referred to as quantum meruit, contract implied-in-law, constructive contract, or quasi-contract,' which is a 'legal fiction invented by the common-law courts in order to permit a recovery … where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Small Bus. Lending, LLC v. Pack*, No. 1:18-cv-02712-JMS-TAB, 2019 WL 3430551, at *12 (S.D. Ind. July 30, 2019) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)). "Indiana courts have held that the 'existence of an express contract precludes a claim for unjust enrichment because: (1) a contract provides a remedy at law; and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law.'" *Id.* (quoting *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011)).

Here, Plaintiffs allege that they "entered into agreements" with the Morris Defendants, that the Morris Defendants "breached the[] agreements," and that the Morris "Defendants have benefitted by Plaintiffs' investment by failing to perform as promised and as compensated." Second Am. Compl., ¶¶ 77-78, 85 (alteration added). Plaintiffs' unjust enrichment allegations derive from the alleged contracts they claim they entered into with the Morris Defendants. Indeed, the unjust enrichment allegations are substantively the same as the Plaintiffs' breach-of-contract claim. *See* Second Am. Compl., Count III (combining the breach-of-contract and unjust enrichment claims). Accordingly, the express terms of the various alleged contracts preclude recovery under a theory of unjust enrichment, and Plaintiffs' unjust enrichment claim against the Morris Defendants must be dismissed.

## 2. The unjust enrichment claim is not properly pled in the alternative.

Plaintiffs claim in paragraph 76 that they are pleading "claims in the alternative," but this is at odds with Plaintiffs' subsequent allegations in Count III. First, Plaintiffs pled their breach-of-contract claim, promissory estoppel claim, and unjust enrichment claim in the same count. The allegations are intertwined, and Plaintiffs make no distinction between which allegations relate to the various claims. And, perhaps most importantly, they specifically allege the existence of contracts with the Morris Defendants. *See* Second Am. Compl., ¶ 77 ("Plaintiffs entered into *agreements*" with the Morris Defendants") (emphasis added). Simply put, Plaintiffs "did not attempt to plead in the alternative; they clearly pleaded in tandem." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). Absent proper alternative pleading, Plaintiffs' unjust enrichment claim cannot survive.

## IV. CONCLUSION

For the foregoing reasons, the Court should (i) strike Plaintiffs' newly added claims under the IUSA, as well as their newly added claim for deception, from the Second Amended Complaint, or, in the alternative, dismiss these new claims pursuant to Rule 12(b)(6), and (ii) dismiss Plaintiffs' claims for fraud in the inducement, promissory estoppel, unjust enrichment, and breach of contract pursuant to Rule 12(b)(6).

Respectfully submitted,

Dated: <u>January 8, 2021</u>

*/s/ David J. Hensel*
David J. Hensel, #15455-49
Amanda L.B. Mulroony, #30051-49
Molly E. Harkins, #35247-49
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
PO Box 44989
Indianapolis, IN 46244-0989
Tel: (317) 822-4400
Fax: (317) 822-0234
dhensel@hooverhullturner.com
amulroony@hooverhullturner.com
mharkins@hooverhullturner.com

*Counsel for Morris Defendants*